[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative or record appeal by the plaintiffs, Robert P. Scholl and Carolyn B. Scholl, from a decision of the Planning 
Zoning Commission of the town of Westport (commission), hereinafter referred to as the defendant. The defendant granted an application by the town of Westport, also a defendant, for a special permit and for coastal area management (CAM) site plan approval to construct a senior activities center on municipally owned property. The site consists of approximately 22.7 acres and is located at 23 Imperial Avenue in Westport. The building and parking will occupy approximately two acres of the property, which is also known as "Baron's South."
General Statutes § 8-24 requires a municipality to obtain approval of the local planning and/or zoning commission before constructing any public building. This approval was granted as part of the application process.
The defendant granted the application by a vote of five to two, and the plaintiffs appealed the decision to this court in accordance with General Statutes § 8-8 (b).[1] Because they are the owners of 29 Imperial Avenue, which "abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board," at a hearing held on August 13, 2002, the plaintiffs were determined to be "aggrieved" pursuant to General Statutes § 8-8 (a) (1).
In accordance with General Statutes § 8-8 (g), the plaintiffs set forth in their complaint the reasons for their appeal and alleged, among other things, that because the traffic study submitted by the applicant did not comply with certain requirements of section 44-2.5 of the Westport Zoning Regulations (regulations) pertaining to increasing traffic and congestion,[2] the defendant commission erred in granting the defendant town of Westport's application. CT Page 398
Access to the subject premises is over a strip of land from Imperial Avenue along the westerly side of the property. The entrance to the site on Imperial Avenue is approximately 350 feet south of the intersection of that street and Post Road East, also known as U.S. Route 1. The plaintiffs allege that the traffic study submitted to the defendant commission did not include the morning and afternoon peak traffic volume information as required by section 44-2.5 of the regulations. The plaintiffs also contend that this intersection is already badly congested and that the proposal by the defendant town will reduce the level of service at that intersection from D to E. Levels of Service denote how well (or poorly) an intersection accommodates traffic given the signal timings, volume levels and geometric characteristics of the streets. There are six Levels of Service, from "A' to "F' as defined in the 1985 Highway Capacity Manual. Level of Service "A' describes the best of conditions with low volumes and no restraints, whereas Level "F' represents severe congestion.
In connection with the site plan submitted to the commission, the plaintiffs allege that the defendant town submitted a site plan which violated section 44-1.3 of the regulations[3] because it did not depict their house, which is located about 20 feet from the property line, 60 feet from the proposed parking lot and 120 feet approximately from the proposed senior center building. The plaintiffs also contend that the proposed senior center is to be located on top of an existing knoll which must be partially leveled and from which certain trees must be removed to accommodate the proposed building.
In their reasons for appeal, the plaintiffs included alleged violations of five specific sections of the standards set forth in section 44-6 of the regulations for the granting of a special permit;[4] four of the requirements for the granting of a site plan in section 44-5.4;[5] and a violation of section 44-5.5 regarding sound absorptive shielding to minimize noise level.
The proposed senior center was designed as a one story building with a partial basement, containing floor area of approximately 11,000 gross square feet, and was to be located in the northwest corner of the site. Parking spaces for 94 cars were depicted on the site plan.
Although a senior center is a permitted use in the Residence A District (1/2 acre) in which the subject premises are primarily located,[6]
sections 13-2 and 11-2.2.1 of the regulations require application to the defendant commission for a special permit and site plan review in accordance with section 43 et seq. of the regulations. According to section 44-6 of the regulations, in reviewing an application for a CT Page 399 special permit, the defendant commission shall consider all the standards for site plans as well as "the public health, safety and general welfare."[7]
Section 44-5 of the regulations pertains to site plans and involves such items as public safety, traffic circulation, pedestrian access, parking, landscaping, screening, liqhting and noise. public health, character and appearance of the neighborhood. Although located in a CAM area, the defendant commission's staff determined that the project was consistent with CAM policies and this conclusion has not been challenged.
In granting the application by the defendant town, the commission noted in its decision of January 4, 2002, that the site plan, the building plans, a traffic analysis and an engineering report had been reviewed by the appropriate boards and commissions. Secondly, the defendant commission also stated that the project was consistent with both the Coastal Area Management Act, General Statutes § 22a-92 (b) (1), and the Town Plan of Development. Lastly, the commission stated that the proposed use conformed with the various requirements of section 44-6 of the regulations set forth in footnote 7, and would "not unreasonably increase traffic congestion in the area, nor interfere with the pattern of highway circulation."
The commission imposed numerous conditions as authorized by General Statutes § 8-2. The conditions that are relevant to this appeal include number 10, which states that the application was granted subject to "[c]onformance to recommendations of Traffic Impact and Access Analysis, prepared for Town of Westport by Frederick P. Clark 
Associates, Inc., dated 11/6/01" (the Clark report) as amended, including "proof that the recommendations in the traffic report will be implemented." Condition 10 required these traffic improvements be submitted to the zoning enforcement officer to insure conformance with this condition.
Condition 14H involved the landscape plan and lighting. The defendant commission ordered the addition of numerous buffer trees, including evergreens, between the proposed parking lot and the plaintiffs' adjacent property. Changes to the lighting plan were ordered to, among other things, prevent light from extending beyond the property line, and to remove certain lights near the plaintiffs' property.
The standard of review by this court in connection with special permits was set forth in Irwin v. Planning Zoning Commission, 244 Conn. 619,711 A.2d 675 (1998), which reversed the Appellate Court's decision in CT Page 400 Irwin v. Planning Zoning Commission, 45 Conn. App. 89, 694 A.2d 809
(1997), that "[i]f the standards for issuance of the special permit have been met by the applicant, a permit must be issued." Id., 95. The Supreme Court held that "[t]his is an incorrect statement of the law with regard to special permits." Irwin v. Planning Zoning Commission, supra,244 Conn. 626. The Supreme Court made the following points: (1) "the special permit process is "discretionary' and not purely ministerial;" Id., 626-27; (2) general considerations including "public health, safety and welfare" may be considered, as well as whether there will be "parking or traffic congestion" adversely affecting the neighborhood; (internal quotation marks omitted) Id., 627; (3) the issue for the trial court is to determine whether the Commission "correctly interpreted" the regulations and applied the relevant section to the facts "with reasonable discretion;" Id., 627- 28; (4) in ruling on a special permit, the agency is acting in an administrative capacity and is "endowed with a liberal discretion;" Id., 628; (5) the only issue for the court to decide is whether the agency action was "unreasonable, arbitrary or illegal;" Id., 628; (6) although if the application meets all the standards the Commission must grant the application, the agency has the discretion "to determine whether the proposal meets the standards set forth in the regulations;" (emphasis in original) Id., 628; (7) the agency must not construe the regulations "beyond the fair import of their language;" Id., 629; (8) if the agency states the reasons for its action, the court's task is to "simply" determine "whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations;" (internal quotation marks omitted) Id., 629; (9) the court cannot substitute its judgment for that of the agency with respect to "factual questions," or the weight of the evidence "[i]f there is conflicting evidence in support of the zoning commission's stated rationale;" (internal quotation marks omitted) Id., 629; and (10) the decision of the agency is to be affirmed "if an examination of the record discloses evidence that supports any one of the reasons given;" (internal quotation marks omitted) Id., 629.
The Appellate Court in Municipal Funding LLC v. Zoning Board ofAppeals, 74 Conn. App. 155, 810 A.2d 312 (2002), recently reaffirmed the applicability of Irwin to the resolution of special permit/exception appeals. The court also reiterated that if the agency does not state the reasons for its decision, it is the trial court's obligation to "search the entire record to find a basis for the board's decision." (Internal quotation marks omitted.) Id., 161. Furthermore, "the trial court must determine whether the board has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Id. It is also axiomatic that in an administrative appeal, the plaintiff has the burden CT Page 401 of proving that "substantial evidence does not exist in the record as a whole to support the agency's decision." Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993).
The essence of this appeal involves the Clark report on traffic. The plaintiffs claim that it is deficient in several respects and does not comply with the requirements of section 44-2.5. See footnote 2 above. According to the plaintiffs, one problem with the report, is that, although the senior center will be open from 8:30 a.m. to 4:30 p.m., the Clark report considers the time between 11:00 a.m. and 1:00 p.m. as the peak traffic period, as opposed to the morning and evening commuter hours. This time period was chosen because, according to the traffic consultant, it more accurately reflects the proposed use of the premises by seniors. Despite some evidence that one of the most popular classes at the current location of the senior center at Staples High School in Westport, Yoga, starts at 8:30 a.m., the traffic expert explained to the defendant commission that for the most part the users would not be arriving early and leaving late, but rather, their use of the senior center would occur around late morning and early afternoon.[8] The commission accepted this theory from the traffic expert, which he testified was based on information obtained from CDOT, and their action was neither illogical nor illegal in this particular regard.
The plaintiffs also contend that, because he did not take into account future increases in the use of the project by other than seniors, the traffic engineer underestimated the number of vehicles generated by the proposal The town planner noted that the senior center must vacate its present location by this spring. 145 seniors are currently served lunch each day, and there are 760 seniors enrolled in the program with varying amounts of attendance.
There was discussion at the public hearing concerning possible future expansion of the proposed building by, for example, adding a second floor and sharing the site with other uses, including a community center. At that hearing, the architect for the project stated: "We have looked at expansion possibilities, in fact in our schematics structural design we provided for a full structural floor or secondstory addition here in this, this zone. There's also room in the site plan, site design for a one-story addition here for a total potential addition of about 3800 square feet." The traffic engineer stated explicitly that he had taken into account possible future expansion,[9] and, most importantly, any such addition will have to come back to the defendant commission at some future time for evaluation. Thus, it cannot be said that the commission acted illegally or in abuse of its discretion in accepting the traffic report in this respect. CT Page 402
The plaintiffs claim that the main deficiency with the traffic report is that it indicates that the "Level of Service" (LOS) at the Imperial Avenue/Post Road intersection will, as a result of the increased traffic from the proposed senior center, decrease from D to E, in violation of subsection (d) of section 44-2.5. The traffic engineer for the defendant town reported that the proposal would generate an additional 204 vehicles. The expert, however, also agreed that the Post Road at the intersection with Imperial Avenue was already over the maximum volume/capacity of 0.8.
The traffic expert for the applicant further conceded that the increased traffic from the senior center would reduce the LOS at the three-way intersection of the Post Road, Imperial Avenue and Myrtle Avenue for traffic turning left to go east on the Post Road from D to E.[10] This would require a denial of the application based on a violation of subsection (d) of section 44-2.5 of the regulations unless the applicant can bring itself within the exception by proving "for the improvement of said inadequate conditions."
The traffic engineer and the defendants' brief contend that the state of Connecticut's Department of Transportation (ODOT) would readily and willingly change the traffic light sequence on the Post Road to improve the intersection in question, but supplied no evidence to that effect. The defendant town, of course, has no control over CDOT, so the reaction to such a request by that department to any changes at that intersection is, at this point, speculative.[11]
An important purpose of zoning is to alleviate traffic congestion. General Statutes § 8-2 provides, among other things, "that zoning regulations `shall be designed to lessen congestion in the streets.'"Wilson v. Planning Zoning Commission, 162 Conn. 19, 23, 291 A.2d 230
(1971). "We have had occasion to consider similar situations in which the zoning authority had no control over street or highway improvements affecting zoning requirements. See Brustein v. Zoning Commission,151 Conn. 101, 105, 193 A.2d 526 (1963); Luery v. Zoning Board.150 Conn. 136, 145, 187 A.2d 247 (1962). . . . These cases indicate that a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless, at least as in the Luety case, the necessary action appears to be a probability." Wilson v. Planning Zoning Commission, supra, 162 Conn. 25. "In the absence of some reasonable assurance . . . that provision would be made for the requisite highway and traffic flow changes for the purposes of alleviating traffic congestion the commission had no authority to change the zone." Wilson v. Planning ZoningCT Page 403Commission, Id.
In Farina v. Zoning Board of Appeals, 157 Conn. 420, 254 A.2d 492
(1969), the commission granted a special exception for the building of an elderly housing and community recreation center subject to the condition that the dead-end road on which the property was situated be widened at the direction of the town traffic commission. A section of the zoning regulations required the board to find "that the existing public streets are suitable and adequate to handle any additional traffic generated by the proposed use." (Internal quotation marks omitted.) Id., 421. The Supreme Court found error in the trial court's dismissal of the appeal: "The board . . . does not have the power to change one of the requirements of the zoning regulations by imposing a condition which is clearly contrary to a requirement of the regulations. The traffic commission can assist the board . . . in its effort to determine how much additional traffic is expected to result from the housing project and what road improvements would be necessary to provide for the increased traffic. The board . . . cannot, however, delegate the duty of making this determination to the town traffic commission." Id., 424-424. Thus, approval of an application based upon future activity of another agency over which the defendant commission or the applicant has no control is not permitted.
While it is equally well recognized that an agency such as the defendant commission in this case should not approve an application that conflicts with its own regulations, that is exactly what happened regarding the LOS at the intersection in question. If the application does not comply with the zoning regulations it cannot be granted.Anastasi v. Zoning Commission, 163 Conn. 187 190-91 302 A.2d 258 (1972);Whisper Wind Development Corp. v. Planning Zoning Commission,32 Conn. App. 515, 520, 630 A.2d 100 (1993), aff'd 229 Conn. 176,640 A.2d 108 (1994) ("Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied.")
The court is also aware of two other principles that apply to special permits. "[T]he consideration that applies to zoning applications is not the overall volume of traffic, but whether the increase in traffic will cause congestion," and "a land use agency cannot deny an application for a permitted use because of off-site traffic considerations." (Citations omitted.) Bethlehem Christian Fellowship, Inc. v. Planning ZoningCommission, 73 Conn. App. 442, 470, 807 A.2d 1089 (2002). The application of these two considerations to this case also requires further analysis by the applicant and the opposition, if the matter is further pursued as CT Page 404 discussed hereinafter.
For the reasons stated above, the plaintiffs have sustained their burden of proof that the record does not contain substantial evidence to support the defendant commission's approval of a project that will decrease the LOS at the Imperial Avenue/Post Road intersection. Accordingly, the court agrees with the appeal of the plaintiffs in this one regard.
The next issue concerns the remedy. It makes little sense to simply sustain the appeal on this one ground in light of the defendant commission's very thorough review and approval of these applications. As the plaintiffs have not sustained their burden of proof except with regard to the decrease in the LOS at this one intersection, the commission's action is accepted in all other respects.
It makes the most sense under these circumstances to modify the defendant's decision as authorized by General Statutes § 8-8 (k) with respect to condition number 17, which, as currently written, requires approval by the zoning enforcement officer of any "improvement" to the intersection in question. If the defendant town desires to pursue its applications, a revised traffic report concerning whether the applicant has complied with subsection (d) of 44-2.5 by providing for "the improvement of said inadequate condition" must be submitted, instead, to the defendant commission. This one issue only should be heard at a public hearing in order that the plaintiffs have the opportunity, if they wish, to contest whether the LOS of that intersection has in fact been "improved." This court will retain jurisdiction over this appeal in the event that the parties hereto wish to contest the propriety of the defendant commission's ruling on any such alleged improvement.
So Ordered.
Dated at Stamford, Connecticut, this 7th day of January, 2003.
 ___________________ William B. Lewis, Judge